# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **BARBARA JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) **Case No.:** |
| **UNIVERSAL HEALTH SERVICES, INC.,** | ) |
| **KEYSTONE MARION, LLC, and** | ) |
| **KEYSTONE EDUCATION AND YOUTH** | ) |
| **SERVICES, LLC, all d/b/a MARION YOUTH** | ) |
| **CENTER,** | ) **JURY TRIAL DEMANDED** |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

1. This is an employment action brought by Barbara Jones arising out of her constructive discharge by her employer because of her investigation of, reporting of, opposition to, and refusal to participate in, her employer's blatant and systemic criminal fraud against Medicaid engaged in by defendants at the Marion Youth Center in Marion, Virginia.

### Jurisdiction And Venue

2. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.,* Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*, and Virginia common law. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. § 1331 in that this action arises under the laws of the United States. This Court has supplemental subject matter jurisdiction over the claims other than those arising under the False Claims Act pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in the United States District Court for the Western District of Virginia pursuant to 28 U.S. C. §§ 1391(b), and 1391(c), and under 31 U.S.C. 3732(a) because each defendant transacts business within the district, and the acts proscribed by the False Claims Act occurred within the district.

## The Parties

4. **Barbara Jones** is a citizen and resident of the United States and Virginia and resides in Lebanon, Virginia.

7. Defendant **Universal Health Services, Inc.,** ("UHS") is a Delaware corporation with its headquarters in King of Prussia, Pennsylvania.

8. Defendant **Keystone Marion, LLC,** is a Virginia limited liability company with its principal office in Nashville, Tennessee.

9. Defendant **Keystone Education and Youth Services, LLC** ("KEYS") is a Tennessee limited liability company with its principal office in Nashville, Tennessee.

10. Upon information and belief, defendants are affiliates of each other. Unless otherwise denoted, the three defendants shall be referred to collectively as "Defendant." UHS indirectly acquired the other two defendants in or around October 2005 and began directing their operations, including the operation of the Marion Youth Center.

## Factual Allegations

**A. Background**

11. On or around September 2004, Keystone Marion, LLC and KEYS began operating Marion Youth Center, a residential 48 bed treatment center for boys ages 11-17, who had serious mental health and behavior problems ("Youth Center"). The Youth Center is located in Smyth County, Virginia.

12. On or around July 20, 2006, Defendant hired Barbara Jones to work at the Youth Center as Director of Education.

13. Her duties at the Youth Center included writing the curriculum, participating in the management team, marketing, and supervising seven teachers and two instructional assistants. She implemented a behavior modification program at the Youth Center that was subsequently adopted by other facilities.

14. With only a few exceptions, Defendant restricted admission to the Youth Center to residents who would qualify for reimbursement of their medical costs under the Medicaid program.

15. Jones knew that Defendant received nearly all of its revenues from Medicaid.

16. Pursuant to federal requirements governing the Medicaid program, including those in the State Medicaid Manual:

> i. each resident must have a minimum of three individual therapy sessions per week;
>
> ii. to stay eligible each resident had to receive at least 21 group sessions a month; and
>
> iii. only services actually rendered may be billed.

**B.     Defendant's Fraud Against Medicaid And Jones' Investigation And Reporting Of It.**

17. In 2007, Jones noticed that on the weekends the Youth Center was not providing any supervision to the residents. In a March 2007 management meeting Jones brought this to the attention of the CEO Gary Burns. He told Jones that she "needed to stay in [her] own lane." He then instructed the entire management team to do likewise — stay in their own lane and worry only about their own department.

18.     In a morning management team meeting in the Fall of 2007, the CEO of the Youth Center, Gary Burns, instructed the management team, including Jones, that the census of the Youth Center must be kept up and that therefore discharges needed to be delayed, even though the Clinical Director Keith Lowry told Burns that the continued retention of some of the residents could not be justified clinically, and that they had been ready for discharge.

19.     After the meeting, Jones told other management team members, including Nick Brown, Residential Director, Janice Collins, Resident Advocate and Training Coordinator, and Robin Poe, Director of Nursing, that what the CEO was doing was improper.   They agreed. Jones suggested that they go over the CEO's head and tell "corporate" about the impropriety. Janice Collins indicated that she was fearful of retaliation and Nick Brown stated his belief that all "corporate" cared about was "the numbers" and making sure that the Youth Center census was kept up.

20.     Through inquiry, observation, and investigation, Jones learned of other wrongful and fraudulent practices occurring at the Youth Center that were encouraged by Defendant, through Gary Burns and other management officials.  These included "drive by" therapy sessions — a therapist would speak briefly to a resident as he passed him in the hall and record it as a thirty-minute individual therapy session, and the admission of residents who did not meet the criteria for admission, simply to get the additional Medicaid monies.

21.     In February 2008, Gary Burns told Jones that she was no longer invited to the morning management meetings.   Jones went to Regina Jones in the Human Resources department and told her about the delays in resident discharges just to boost census and Medicaid revenues, the lack of any supervision on the weekend, and other serious malfeasances committed under the direction of Gary Burns at the Youth Center, and about his exclusion of Barbara from

the morning management meetings. Regina Jones told Barbara that Regina had filed Barbara's complaint with "corporate" and that they would be contacting her about it. They never did.

22. In April 2008, Jones met with Marta Rusley-Parker, a Clinical Supervisor for UHS, and informed her of the wrongdoing occurring at the Youth Center, including the deliberate delays in discharges of residents solely to increase fraudulently Medicaid revenues.

**C.     Defendant's Discrimination and Retaliation Against Jones.**

23. Jones was told by Defendant's managers to "keep her mouth shut."

24. On one night, in the Spring of 2008 at approximately 8 p.m., Jones observed Gary Burns faxing documents to Medicaid. Jones regarded this as very suspicious since this was typically delegated to the therapist and it was done during normal business hours. When Burns temporarily left the fax machine to get a cup of coffee, Jones investigated by going to the fax machine and looking at the documents. She discovered that included in the documents that Gary Burns was faxing to Medicaid were purported therapists' notes and that Gary Burns had fraudulently signed them as the therapist. Jones then reported to Director of Nursing Robin Poe her discovery of Gary Burns' submission of false and fraudulent records to Medicaid.

25. On or around July 2008, Gary Burns, CEO, ordered Jones to fabricate a Virginia IEP for submission to Virginia Medicaid for a child who had come from West Virginia to the Youth Center as a prospective resident. Jones knew that Burns was attempting to have Defendant submit false claims to Virginia Medicaid for that child. She pointed out to Burns what she believed was already obvious to him ---- that Defendant's proposed action was illegal and fraudulent. Burns then dismissed her objections by stating that they (Defendant) would not get "paid" until they "got" an IEP. A few days later, Larry Brown, another official of Defendant, also ordered Jones to "come up" with an IEP. She voiced her opposition to fabricating and

submitting the false IEP to Virginia Medicaid, and refused to fabricate the IEP. Brown became visibly agitated and told Jones that she was costing the Defendant $10,000 and to come up with the IEP or find another job.

26. Shortly thereafter, Gary Burns convened a management team meeting, and included Jones in the meeting. At the meeting, he stated that he was "top dog" and that if anyone thought that they could complain about him without him knowing, then they had a lot to learn. He then looked directly at Jones and said that "you can either get with the program or find another job."

27. After Defendant made Jones continued employment intolerable to her through its actions described above, particularly Defendant's insistence that she participate directly in the Medicaid fraud, Jones had no reasonable alternative but to submit her resignation, which she did on July 30, 2008 with the intent that her last day of employment would be August 8, 2008.

28. Jones then spent the remainder of her employment time at an educational conference and on vacation.

29. On August 8, 2008, Jones returned to the Youth Center to say goodbye to her fellow employees and to retrieve her personal items. Upon arrival, Defendant's receptionist told Jones that she could not enter the building alone and that Regina Jones would escort her to her office to clean it out. Regina Jones told Jones that she was acting under the instructions of Gary Burns. Regina Jones was under orders to escort Jones the entire time she was in the building and to stand there and watch Jones pack her things to make sure she did not take any nonpersonal items. At this time, Gary Burns was conducting the morning management meeting in the conference room. As Regina and Barbara passed by the conference room on the way to Barbara's office, Regina opened the conference room door.

30.     Barbara told Regina that was she was not a thief and began crying in reaction to Defendant's treatment of her.

31.     When Jones entered her office, which she had locked because her office was designated high security with access limited to only two management officials, she discovered that it has been ransacked.  Based on the limited number of people who had access, it was clear to Jones that the ransacking was the doing of management.

32.      After she had packed up her personal items, Defendant had Regina parade Barbara down a hallway in view of the staff and past the open door of the conference room so that the management team could see Barbara in tears being led out of the building with her personal belongings.

33.     Defendant's actions on August 8, 2008, were deliberately calculated to humiliate Jones, to intimidate her from continuing her investigation and exposure of Defendant's Medicaid fraud, and to serve as a warning to other employees what would happen to them if they took steps to investigate, expose and/or oppose Defendant's systemic defrauding of Medicaid.

34.      Up and through the last day of her employment with the Defendant,  Barbara Jones met or exceeded Defendant's performance expectations for her, including receiving exemplary performance reviews and commendations  for her development of the educational program; that is, except for her actions taken to investigate and report the Defendant's fraudulent activities and her insubordinate refusal to participate in Defendant's fraud against Medicaid.

### Count I -- False Claims Act Discrimination Claim

35.     Jones hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

36. Jones was discriminated against, and discharged from her employment by Defendant, because of lawful acts done by Jones in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act.

37. The actions of Defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged Jones.

38. Jones suffered damages from Defendant's actions that include, but are not limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

39. Therefore, Jones is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

### Count II — Virginia Taxpayers Against Fraud Act Discrimination Claim

40. Jones hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

41. Jones was discriminated against in the terms and conditions of her employment, and ultimately constructively discharged because she opposed the actions of Defendants as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

42. Therefore, Jones is entitled to the relief provided by Virginia Code section 8.01-216.8.

### Count III — Virginia Wrongful Discharge Claim

43. Jones hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

44.     By directing Jones in July 2008 to participate in Virginia Medicaid fraud by ordering her to create a false record for submission to Virginia Medicaid in order to get Medicaid funds, Defendant was ordering Jones to commit an act that would violate both federal and state criminal statutes, and that therefore would constitute a criminal act under both the United States and Virginia Code.

45.     Defendant's order to Jones that she actively participate in the fraud by committing criminal acts (in an environment of systemic criminal fraud being committed on a daily basis for months by Defendant), and her insubordinate refusal to do so, rendered her continued employment intolerable to her (and to any reasonable person) and she was forced to resign.

46.     Accordingly, Jones was constructively discharged by Defendant based on her refusal to engage in criminal acts.

47.     Defendant's actions were willful, wanton, intentional, committed with malice and a conscious disregard for the rights of Jones

48.     Jones suffered damages from Defendant's actions that include, but are not limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

49.     Jones suffered and continues to suffer from Defendants' actions that included, willful, wanton and intentional conduct based on her refusal to engage in fraudulent activities.

**Wherefore,** Jones requests that the Court grant her:

(a)     all the relief to which she is entitled pursuant to 31 U.S.C. § 3730 (h), including personal injury damages, emotional and mental distress, two times her back pay, interest on the back pay, front pay or reinstatement, attorneys fees and litigation costs;

(b)     all of the relief to which she is entitled under section 8.01-26.8 of the Virginia
         Taxpayers Against Fraud Act;

(c) compensatory damages for her wrongful discharge;

(d) punitive damages;.and

(e) such other relief as the Court finds appropriate.

## A TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

BARBARA JONES


/s/ Mark T. Hurt
Mark T. Hurt (VSB#36380)
159 West Main Street
Abingdon, VA 24210
(540) 623-0808 Phone
(540) 623-0212 Fax

Daniel R. Bieger (VSB# 18456)
Copeland & Bieger
212 W. Valley Street
Abingdon VA 24212
(276) 628-9525 Phone
(276) 628-4711 Fax

Counsel for Barbara Jones